UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **CATHY SIMMS,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | |
| | * | |
| CIT GROUP/CONSUMER FINANCE, | * | |
| SUN MORTGAGE COMPANY, LLC, | * | NO.   08-2655 An |
| ACCURATE TITLE AND ESCROW, | * | JURY DEMAND |
| JAMES RANDLE, | * | |
| AVALON FINANCIAL CORP, | * | |
| and MICHAEL BATES, | * | |
| | * | |
| | * | |
| **Defendants.** | * | |

## AMENDED COMPLAINT

COMES NOW the plaintiff, Cathy Simms, by and through undersigned counsel, and in support of her claim for relief against the Defendants files this Complaint and states the following:

### I. PRELIMINARY STATEMENT

This is an action for damages and equitable relief, arising under the Fair Housing Act, the Truth in Lending Act, the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, the Tennessee Home Loan Protection Act of 2007, the Tennessee Consumer Protection Act, fraud, conversion, negligent misrepresentation, breach of fiduciary duty, breach of contract, and conspiracy to commit some or all of the aforementioned torts.  All aforementioned acts constitute predatory lending practices and a predatory lending scheme by Defendants.

1

## II. JURISDICTION

1. This action is brought pursuant to the provisions of the Truth in Lending Act, 15 U.S.C. §1601, et seq. and the Real Estate Settlement Procedures Act, 12 U.S.C. §1601 et seq., Fair Housing Act, 42 U.S.C. §§ 3601 et seq., the Home Owner Equity Protection Act, 15 U.S.C. § 1639 et seq. and the Equal Credit Opportunity Act, 15 U.S.C. § 1331 et seq.   Jurisdiction is conferred on this Court by 28 US.C. §1331, 42 U.S.C. §3613, T.C.A., with resulting supplementary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## III. VENUE

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that Plaintiffs and all Defendants reside or do business in this district and/or a substantial part, if not all, of the events or omissions giving rise to the claim occurred in this district; venue is proper in this district pursuant to 18 U.S.C.§ 1965 (a) in that all parties either reside, are found, have an agent, and/or transact affairs in this district.

## IV. THE PARTIES

3. The Plaintiff, Cathy Simms, is a natural person, residing in Shelby County, Tennessee, at 5160 Schutt Road, Memphis, TN 38116.

4. Defendant, CIT Group/Consumer Finance, Inc. (hereinafter "CIT"), is a for-profit foreign corporation, duly registered to transact business in the State of Tennessee, with its principal place of business at 1 CIT Drive, Livingston, NJ 07039. Its registered agent for service of process is C T Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929.

5. Defendant, Sun Mortgage Company, LLC (hereinafter "Sun Mortgage") is a for-profit Tennessee corporation duly registered to transact business here in the State of Tennessee, with it principal place of business located at 5545 Murray Road, Suite 206, Memphis, TN 38119. Its registered agent for service of process is Perkeith Clayborn, 5545 Murray Road, Suite 206, Memphis, TN 38119.

6. Defendant, Accurate Title & Escrow (hereinafter "Accurate Title") is a for profit Tennessee corporation, duly registered as an inactive corporation in the State of Tennessee, with its principal place of business located at 1181 Nashville Pike, Gallatin, TN 37066. Its registered agent for service of process is Roland M. Lowell, 1181 Nashville Pike, Gallatin, TN 37066.

7. Defendant, Avalon Financial Corp. (hereinafter Avalon Financial) is a for profit Ohio Corporation, duly registered in the state of Ohio, with its principle place of business located at 24803 Detroit Road, Suite 5, Westlake, OH 44145. Its registered agent for service of process is Jerry Slone, 1463 Warrensville Road, Suite 201, South Euclid, OH 44121.

8. Defendant, James Randle, is an adult resident of the State of Tennessee. Upon information and belief, James Randle is an employee of Sun Mortgage Company, LLC, which is located at 5545 Murray Road, Suite 206, Memphis, TN 38119.

9. Defendant, Michael Bates, is a duly licensed attorney in the state of Tennessee, locate at 8531 Hundred Oaks Drive, Germantown, TN 38139.

## IV. FACTUAL ALLEGATIONS

9. Plaintiff, Cathy Simms, is a 47 year old African American woman.

10. The Plaintiff suffers from a psychiatric disability. She and her disabled son

3

live on $1,350 in Social Security disability benefits per month.

11. At the time of this transaction, Plaintiff was on the Section 8 housing assistance program which provided her a significant rental housing subsidy, and without which she would not have been able to make even rent payments.

12. The Plaintiff has a twelfth grade education.

13. Prior to her encounter with these Defendants, the Plaintiff had never owned a home.

14. The Plaintiff suffers from a significant thought disorder and takes psychotropic medication. Her disability should be evident to anyone who has more than superficial dealings with her.

15. Plaintiff was living in an apartment with the assistance of a Section 8 voucher, when her cousin referred her to James Randle of Sun Mortgage to inquire about buying a home through the Section 8 program.

16. Plaintiff contacted Defendant Randle about buying a home through the Section 8 program. Plaintiff stated to Defendant Randle that she was eligible for help purchasing a home through the Section 8 program. Defendant Randle convinced Plaintiff that it was not a good idea to buy a home through Section 8's homeownership program. Defendant Randle's reasoning was that if something happened to Ms. Simms, Memphis Housing Authority would have ownership of her property.

17. Defendant Randle showed Plaintiff three houses. Plaintiff stated to Defendant. Randle that she liked the house located at 5160 Schutt Road.

18. Plaintiff was initially interested in buying the house located at 5160 Schutt

        Road using the assistance from the Section 8 program. Defendant Randle would not contact the Memphis Housing Authority.

19. As an unsophisticated consumer, Ms. Simms did not realize she would lose the Section 8 voucher that she had for 15 years by buying a house outside the Section 8 program.

20. Plaintiff questioned whether she should purchase a house or remain in subsidized housing. Plaintiff did not believe she could afford to pay the costs of the mortgage. Plaintiff contacted Tamara Faulkner of Sun Mortgage to express her concerns. Ms. Faulkner assured Plaintiff that she would be able to refinance the loan in two years and that the interest rate would go down.

21. Defendant Randle of Sun Mortgage called to convince Plaintiff that buying this house would be in her best interest. Defendant Randle told Plaintiff that owning a home was the "American dream" and that he had already "taken care of everything."

22. Defendant Randle contacted Plaintiff and that he could have the closing a week. Plaintiff, relying on Defendant Randle's representations, decided to purchase the house. Defendant Randle scheduled the closing for February 23, 2007.

23. Defendant Randle personally drove Plaintiff from her workplace to the closing, and assured Plaintiff that he would be present the entire time to explain the closing process to her.

24. Defendant Randle did not remain with Plaintiff at the closing. He left Plaintiff alone with the settlement agent from Accurate Title who, upon information

and belief, instructed Plaintiff not to read any of the documents she was signing.

25. The settlement agent from Accurate Title hurried Plaintiff through the closing process. The agent did not allow Plaintiff to read the loan documents, nor did he explain the loan documents or loan terms to Plaintiff.

26. Plaintiff, who is unsophisticated in financial matters, signed the loan documents on or around February 23, 2007, consummating the home purchase loan with CIT.

27. The loan was brokered by Sun Mortgage, LLC and closed by Accurate Title & Escrow, Inc.

28. The principal sum of the loan was to cover the purchase of the home located at 5160 Schutt Road, Memphis, TN 38116.

29. The February 23, 2007 loan consummation between CIT Group and Plaintiff, consummated an adjustable rate mortgage loan of $95,000 to finance the purchase of a home at an initial interest rate of 10.6%. The interest rate on this loan is set to readjust on March 1, 2009 and every six months thereafter.

30. Plaintiff's payments are based upon a thirty year interest-only loan with an outrageous balloon payment of $90,239.87.

31. Upon information and belief, Defendant Sun Mortgage, through their agents, initially enrolled Plaintiff in an Equity Savings Program with Avalon Financial Corporation. Plaintiff subsequently cancelled her enrollment in the program after it became evident that it was against her pecuniary interest.

32. Sun Mortgage based the loan on their fraudulent statement in her loan

application that Plaintiff's monthly income was $2,950.

33. CIT Group knew or should have verified Plaintiff's monthly income was only $1,350.

34. Plaintiff was unaware of the fraudulent information on her application.

35. Under the terms of the loan, Plaintiff was to make twenty four monthly payments in the amount of $843.48, six monthly payments of $1,077.00, three hundred twenty nine monthly payments of $1,108.37 and a balloon payment of $90,239.87. Even during the initial "teaser" interest rate, the monthly mortgage payment was more than 60% of her income.

36. This was a fifty year loan. Plaintiff was to pay interest only for thirty years and a balloon payment at the end of thirty years of $90,239.87.

37. Defendants directly or indirectly financed points and fees totaling more than 6% of the total loan amount.

38. The total fees charged on the loan were $6443.54, including a $454.61 Yield Spread Premium (kickback) paid to the mortgage broker, Sun Mortgage Company, by CIT.

39. The loan contains a prepayment penalty. A 5% penalty is charged if the prepayment occurs in the first year following the closing, and 4% if the prepayment occurs in the second year following the closing.

40. The monthly mortgage payment is $843.48, with a balloon payment of $90,239.87.

41. The actual settlement charges are 17% higher than the settlement charges CIT stated on the good faith estimate of closing costs required by federal law.

42. The deed of trust securing this high-cost loan does not state on its face that the deed of trust secures a high cost loan as required by the Tennessee Home Loan Protection Act.

43. Even though the loan was consummated, Plaintiff did not receive the necessary disclosures before or during the closing of the loan.

44. Defendants did not disclose to Plaintiff that the interest rate on her mortgage was adjustable and that her monthly payments would increase over the life of the loan.

45. Defendants did not disclose to Plaintiff that her payment schedule included a final $90,239.87 balloon payment on a $95,000 loan.

46. Defendants did not disclose to Plaintiff that her loan included a sizeable prepayment penalty, the terms of which violate state law.

47. Defendants did not provide Plaintiff with a valid Truth-in-Lending statement.

48. The Truth-in-Lending statement provided by Defendants at closing does not indicate that a huge, unconscionable, balloon payment will be due in thirty years.

49. Defendants did not provide Plaintiff with written notice informing her of her rights and obligations should she agree to the loan and to advise her to seek independent financial advice.

50. Shortly after the consummation of this loan, Plaintiff fell behind in her mortgage payments because she was unable to afford the payments which were more than 60% of her monthly income.

51. To stave off foreclosure, Plaintiff filed for Chapter 13 Bankruptcy protection.

52. Plaintiff's Chapter 13 Bankruptcy case was ultimately dismissed.

53. Subsequent to the dismissal of her Chapter 13 Bankruptcy case, Plaintiff sought help to save her home from foreclosure. Specifically, Plaintiff obtained the services of Memphis Area Legal Services who tried to work out an agreement with CIT for Plaintiff to remain in her home, but such efforts were to no avail.

54. On September 3, 2008, Defendant CIT by Successor Trustee, Trustee Management Company, informed the Plaintiff of proceedings to foreclose on her home.

55. Plaintiff brought the correspondence from Trustee Management Company into Memphis Area Legal Services. Plaintiff did not have the notice of when the foreclosure of the property in question was going to take place.

56. Plaintiff diligently searched for the foreclosure notice in both the Memphis Daily News and the Memphis Business Journal and could not find the notice of foreclosure.

57. Plaintiff, by and through counsel, contacted Trustee Management Services on or about September 15, 2008 to discern at what time on October 3, 2008 the foreclosure sale of Plaintiff's house was to take place and to see if the foreclosure sale could be postponed. A representative for Trustee Management Services stated to counsel that Jeremiah Jones of Foreclosure Management Services was the person responsible for handling the foreclosure sale.

58. Plaintiff, by and through counsel, spoke with Mr. Jones of Foreclosure

        Management Services on or around September 15, 2008. Plaintiff inquired with Mr. Jones if the foreclosure of Plaintiff's home could be postponed from its proposed October 3, 2008 date. Mr. Jones stated to Plaintiff that he and Foreclosure Management Services were just the "middle man" in the foreclosure process and that Plaintiff would have to speak with the attorney handling the foreclosure sale about getting the sale postponed. Mr. Jones informed Plaintiff that the attorney handling the foreclosure sale was Michael Bates.

59.    All representations made by Mr. Jones during this telephone conversation made Plaintiff's counsel believe the foreclosure sale was to take place on October 3, 2008 at 12:00 noon.

60.    Plaintiff, by and through counsel, spoke with Defendant Bates, on or around September 22, 2008. Plaintiff asked Defendant Bates if he could postpone the foreclosure sale set for October 3, 2008 at 12:00 p.m. Defendant Bates stated that he was the attorney who cried the call at the foreclosure sale. Defendant Bates stated he did not have the authority to postpone the foreclosure sale. Plaintiff would have to speak with Jeremiah Jones of Foreclosure Management Services to see if the foreclosure sale could be postponed.

61.    All representations made by Defendant Bates during this telephone conversation again made Plaintiff's counsel believe the foreclosure sale was to take place on October 3, 2008 at 12:00 p.m. Defendant Bates did not correct Plaintiff when Plaintiff represented to him the belief that the foreclosure was to take place on October 3, 2008 at 12:00 p.m.

62. Plaintiff, by and through counsel, contacted Mr. Jones at Foreclosure Management Services on or around September 22, 2008. Plaintiff inquired of Jones if the foreclosure sale set for October 3, 2008 at 12:00 p.m. could be postponed. Plaintiff stated to Mr. Jones that Plaintiff was filing a lawsuit against CIT Group and as such it may be necessary to postpone the sale pending the outcome of the lawsuit. Mr. Jones stated that CIT Group would go forward with the sale even if Plaintiff filed a lawsuit.

63. All representations made by Mr. Jones during this telephone conversation again made Plaintiff's counsel believe the foreclosure sale was to take place on October 3, 2008 at 12:00 p.m. Mr. Jones did not correct Plaintiff when Plaintiff represented to him the belief that the foreclosure was to take place on October 3, 2008 at 12:00 p.m.

64. Plaintiff, by and through counsel, contacted Mr. Jones of Foreclosure Management Services on or around October 2, 2008. Plaintiff stated to Mr. Jones that Plaintiff was filing a lawsuit against CIT Group and requested the foreclosure sale scheduled for October 3, 2008 at 12:00 p.m. be postponed. Mr. Jones stated he would contact CIT Group to get permission to postpone the foreclosure sale. Plaintiff never received communication that the foreclosure sale was postponed.

65. All representations made by Mr. Jones during this telephone conversation made again made Plaintiff's counsel believe the foreclosure sale was to take place on October 3, 2008 at 12:00 p.m. Mr. Jones did not correct Plaintiff when Plaintiff represented to him the belief that the foreclosure was to take

place on October 3, 2008 at 12:00 p.m.

66. Plaintiff filed the lawsuit against CIT Group on October 2, 2008. Plaintiff concurrently filed a motion for temporary injunctive relief to enjoin the foreclosure sale of Plaintiff's house.

67. Plaintiff, by and through counsel, contacted Defendant Bates on October 3, 2008 at approximately 9:00 a.m. to apprise Defendant Bates that Plaintiff had moved to enjoin the foreclosure sale of her house. Plaintiff was unable to communicate with Defendant Bates directly so Plaintiff informed Defendant Bates of the motion for injunctive relief by way of a voicemail.

68. Defendant Bates returned Plaintiff's phone call at approximately 11:00 a.m. on October 3, 2008. Plaintiff, by and through counsel, spoke with Defendant Bates about her motion to enjoin the foreclosure sale. Plaintiff told Defendant Bates that she had not yet received injunctive relief, but was still trying to obtain it. Defendant Bates stated to Plaintiff to inform him if she obtained injunctive relief and that he would only wait to sell the house until the scheduled time of 12:00 p.m.

69. Plaintiff obtained injunctive relief, temporarily enjoining the sale of Plaintiff's house, at approximately 11:55 a.m. on October 3, 2008. Plaintiff, by and through counsel, contacted Defendant Bates immediately to inform him Plaintiff had received injunctive relief. Plaintiff left Defendant Bates a voicemail message informing him CIT was temporarily enjoined from selling Plaintiff's house.

70. Defendant Bates called Plaintiff's counsel more than four hours after the

injunction was issued and left a voicemail message. Defendant Bates stated to Plaintiff's counsel that he was "mistaken" about whom Plaintiff was speaking of and that he had sold Plaintiff's home at a foreclosure sale at 10:00 a.m. on October 3, 2008 instead of the represented 12:00 p.m.

71. Defendants consistently misrepresented the time, place and manner to Plaintiff. The foreclosure sale took place on October 3, 2008 at 10:00 a.m. instead of the represented 12:00 noon.

72. Defendants' misrepresentations of the time, place and manner of the foreclosure sale, caused Plaintiff to justifiably believe the foreclosure sale was to take place on October 3, 2008 at 12:00 noon.

73. Defendants' misrepresentations of the time, place and manner of the foreclosure sale caused Plaintiff's house to be sold and limited the scope of Plaintiff's injunctive relief.

74. Upon information and belief, CIT bought the house at the foreclosure sale.

## V. FIRST CAUSE OF ACTION

75. Plaintiff Cathy Simms does hereby incorporate all averments contained in the previous paragraphs contained in this complaint.

76. Defendants have violated the provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and Regulation X which implements RESPA, 24 C.F.R. § 3500, et seq. Specifically, among others, the Defendants have violated these provisions by failing to provide the Plaintiff with a proper "Good Faith Estimate" of the amount or range of settlement charges prior to closing (12 U.S.C. § 2604 (c) and 24 C.F.R. §

3500.7), and by charging excessive or unearned fees (12 U.S.C. § 1607(b)), and by producing fraudulent settlement statements.

## SECOND CAUSE OF ACTION

77. Plaintiff, Cathy Simms does hereby incorporate all averments contained in the preceding paragraphs.

78. This Plaintiff is a mentally disabled African American citizen of the United States who resides in Memphis, Shelby County, Tennessee. The Plaintiff alleges that all Defendants were involved in a scheme to exploit Plaintiff, with fraudulent loan practices, due to her race and mental disability. All Defendants have violated 42 U.S.C. § 3601 et.seq.

79. Specifically, Defendants knew or had a reasonable belief that Plaintiff was mentally disabled. Defendant's acting upon that knowledge or belief subjected Plaintiff to discriminatory terms and conditions on a loan she neither wanted nor needed, thereby reducing her ability to use and enjoy housing. Defendants' acts constituted a violation of the Fair Housing Act.

80. With respect to Plaintiff's dwelling, the Defendants discriminated against the Plaintiff in the terms and conditions of the mortgage loan and in the provision of services in connection therewith because the Plaintiff is African American and mentally disabled.

## VII. THIRD CAUSE OF ACTION

81. Plaintiff, Cathy Simms, does hereby incorporate all averments contained in the preceding paragraphs of this complaint.

82. Plaintiff alleges that all Defendants, except upon information and belief James Randle, have violated the provisions of the Consumer Credit Protection Act or Truth-In-Lending Act, 15 U.S.C. 1601, et seq., and Regulation Z which implements the Truth-In-Lending Act, 12 C.F.R. 226, et seq.  Specifically, among others, the Defendants violated these provisions by failing to provide information to the borrower, in failing to provide and properly disclose a correct itemization of the amount financed and the total monthly payments due and in fraudulently concealing their violations from the Plaintiff.

### VIII. FOURTH CAUSE OF ACTION

83. Plaintiff, Cathy Simms, does hereby incorporate all averments contained in the preceding paragraphs of this Complaint.

84. Plaintiff alleges that Defendants have violated and attempted to violate the Tennessee Home Loan Protection Act T.C.A. §45-20-103 et. seq.  The loan from CIT Group was a high-cost loan as defined by the Act. The Act defines a High-Cost loan as one in which the points and fees exceed five percent (5%) of the total loan amount for loans of more than thirty thousand dollars ($30,000.00). The loan contained points and fees that totaled more than five percent (5%) of the total loan amount.

85. The original loan is not amortized through the life of the loan and contains a balloon payment prohibited by the Act. The Defendants did not provide appropriate disclosures as required by the act. Furthermore, the Defendants have made loans and conspired to make loans with no regard as to the Plaintiff's ability to repay and have financed fees and charges totaling well

over three percent (3%) of the loan amount through the proceeds of the loan. The Defendants have also initiated foreclosure without providing notice as required by the Act.

### IX.  FIFTH CAUSE OF ACTION

86. Plaintiff does hereby incorporate all averments contained in the previous paragraphs of this complaint.

87. Defendants intentionally, negligently, and fraudulently misrepresented to Plaintiff Cathy Simms about the nature and terms of the transactions they were entering into. Plaintiff was especially vulnerable to exploitation because of her mental disability.

88. Defendants' conduct was willful, malicious, oppressive and constitutes an intentional scheme to defraud the Plaintiff with the intention of depriving her of her home and her legal rights.

89. Defendants made false representations of existing and past material facts; that such false representations were made knowingly, without belief in their truth, or recklessly; and that the Plaintiff reasonably relied upon them and thereby suffered damage as a result of such reliance.

### X. SIXTH CAUSE OF ACTION

90. Plaintiff, Cathy Simms, does hereby incorporate all averments contained in the previous paragraphs contained in this complaint.

91. In committing the acts complained of, all defendants have engaged in fraudulent and/or deceptive business practices / transactions toward Plaintiff and have thereby violated the provisions of the Tennessee Consumer

      Protection Act, Tenn. Code Ann. § 47-18-101, et seq., resulting in damage to the Plaintiff.

### XI. SEVENTH CAUSE OF ACTION

92. Plaintiff Cathy Simms does hereby incorporate all averments contained in the previous paragraphs contained in this complaint.

93. Defendants in this action have acted unconscionably, including but not limited to exploiting Plaintiff's diminished capacity by duping her to agree to a grossly overpriced home loan and charging an exorbitant interest rate and excessive fees.

94. Plaintiff is a mentally impaired consumer who was unjustly taken advantage of by the Defendants' actions.

### XII. EIGHTH CAUSE OF ACTION

95. Plaintiff, Cathy Simms, does hereby incorporate all averments contained in the previous paragraphs contained in this complaint.

96. The Defendants were acting in the course of business or in transactions involving pecuniary interest.

97. The Defendants provided faulty information to the Plaintiff that was meant to guide the Plaintiff through the transaction and provided faulty information as to when and where the transaction was to occur.

98. The Defendants failed to exercise reasonable care in obtaining and communicating information.

99. The Plaintiff justifiably relied on the faulty information from the Defendants to her detriment.

100. Defendants had a duty of due care to Plaintiff and that the Defendants breached such duty to Plaintiff by omitting or misrepresenting material information to Plaintiff.

101. The negligent misrepresentation of Defendants was the proximate cause of damages suffered by Plaintiff.

WHEREFORE, Plaintiff Cathy Simms prays:

1. That Defendants be found liable for intentional and negligent misrepresentation.
2. That Defendants be ordered to pay Plaintiff Cathy Simms compensatory damages.
3. That Defendants pay to Plaintiff Cathy Simms incidental and consequential damages, plus all costs.
4. The Plaintiff Cathy Simms be awarded damages and costs, in accordance with the Truth in Lending Act for Defendants' knowing and willful violations.
5. That Defendants be ordered to return to Plaintiff any money or property given by Plaintiff to anyone in connection with the consumer credit transaction.
6. That Defendant CIT Group be enjoined thereafter from instituting, prosecuting, or maintaining foreclosure proceedings on Plaintiff s property, from advertisement of notices of sale concerning the property, recording any deeds or mortgages regarding the property and from otherwise taking any steps to deprive Plaintiff of ownership of the property.
7. That Plaintiff be awarded actual and enhanced damages pursuant to 15 US.C. §1640 (a)(2)(A)(iii) and §1640 (a)(4), and actual and punitive damages pursuant to 15 US.C §1691 (e).

8. That the right to retain proceeds vests in Plaintiff.

9. That the costs of this action be assessed against the Defendants.

10. That a trial by jury be held in this case.

11. For such other and further relief to which the Plaintiff may be entitled and which the Court deems just and proper.

Dated: October 22, 2008

        Respectfully submitted,

        /s/Sapna V. Raj

        _____
        Webb A. Brewer, BPR # 9030
        Sapna V. Raj, BPR # 19679
        Craig M. Carmean, BPR # 024349
        Counsel for Cathy Simms
        Memphis Area Legal Services, Inc.
        Memphis Fair Housing Center
        109 N. Main Street, Suite 201
        Memphis, TN 38103
        901-523-8822